GOTZ GRUNDEY v. CLARK TRANSFER COMPANY, INC.

No. 7821SC936

(Filed 17 July 1979)

1. **Uniform Commercial Code § 37; Warehousemen § 1— issuance of warehouse receipt—delivery not necessary**

   A warehouse receipt need not be delivered in order to be issued, but must be sent forth.

2. **Uniform Commercial Code § 37; Warehousemen § 1— proper issuance of warehouse receipt—material question of fact**

   The proper issuance of a warehouse receipt required not only a mailing of the receipt to the owner of the stored goods but a mailing to the proper address. An issue of material fact existed as to whether a warehouse receipt was properly issued where defendant warehouseman alleged the current address it had for plaintiff owner was in Boone, N. C., and plaintiff alleged he notified defendant by telephone that his address had been changed to Stuart, Fla.

3. **Uniform Commercial Code § 37; Warehousemen § 1— sale of goods to satisfy warehouseman's lien—compliance with U.C.C.**

   In this action to recover the value of goods sold to satisfy a warehouseman's lien, the trial court erred in striking defendant warehouseman's defense that it had complied with the requirements of G.S. Ch. 25 in the issuance of a warehouse receipt and sale of the goods.

4. **Uniform Commercial Code § 37; Warehousemen § 1— sale of goods to satisfy warehouseman's lien—effect of insufficient description**

   A newspaper advertisement description of goods to be sold to satisfy a warehouseman's lien as the "household goods" of a named person was insufficient to satisfy the requirements of G.S. 25-7-210(2)(f); however, the insufficient description did not invalidate the sale but entitled the owner of the goods to whatever damages he could prove resulted from noncompliance with the statute.

APPEAL by defendant from *Rousseau, Judge*. Order filed 17 July 1978 in Superior Court, FORSYTH County. Heard in the Court of Appeals 14 June 1979.

Plaintiff by his complaint alleges the following:

Defendant is in the business of moving and storing furniture and other personal property. In August 1975 plaintiff contracted with defendant for the transportation of plaintiff's furniture and other personal property from Benson, North Carolina to Statesville, North Carolina. The property, worth at least $8,000, was picked up by defendant's agents. Subsequently, plaintiff changed

his plans, and instructed Jim Rhoney, defendant's agent, not to deliver his property to Statesville. The parties agreed that defendant would store plaintiff's property until plaintiff's destination was finally determined, in exchange for a storage fee to be paid in addition to the original transportation fee.

During the next two months, plaintiff telephoned defendant on several occasions to keep defendant apprised of his whereabouts. Defendant made no demand for payment of plaintiff's bills and did not object to continuing to store the property. In September 1975 plaintiff contacted Rhoney and advised him that plaintiff's employer had agreed to pay his moving expenses. Plaintiff requested a bill for his employer, and received a bill of $654.31. He passed this bill on to his employer and assumed that it had been paid.

In November 1975 plaintiff called defendant and left with an employee his address and phone number in Stuart, Florida. No mention was made of the bill not having been paid, and plaintiff was never contacted in Stuart. In December or January plaintiff moved to Jupiter, Florida and in May to Hilton Head, South Carolina, leaving a forwarding address in Stuart. Plaintiff never heard from defendant.

On 27 July 1976 plaintiff telephoned defendant to have his property delivered to an address in Hilton Head. He was advised by an employee of defendant that all of his furniture and personal property had been sold at public auction.

Plaintiff contends in the alternative: that defendant failed to comply with the statutory procedures for enforcement of possessory liens on personal property; that defendant as bailee is liable to plaintiff for its inability to return plaintiff's property; that defendant breached the contract between the parties; and that defendant is liable for the conversion of plaintiff's property.

Defendant moved to dismiss for failure to state a claim upon which relief can be granted, and for summary judgment. These motions were denied by Judge Lupton. The parties filed and answered interrogatories and defendant filed its answer and counterclaim, alleging that it had complied with the applicable statutes and seeking to recover from plaintiff the $85.12 of plaintiff's bill not covered by the proceeds from the sale of his property.

Plaintiff moved to strike defendant's Sixth Defense and in the alternative for summary judgment on that defense, which alleged that Chapter 25 and not Chapter 44A of the General Statutes applied to the transaction between the parties. Defendant moved for summary judgment or partial summary judgment on the same matter. Judge Rousseau concluded that as a matter of law Chapter 44A does not apply to the transaction, that defendant had failed to comply with the requirements of Chapter 25, and that any defense based on Chapter 25 should be stricken. Accordingly, plaintiff's motions were granted and defendant's motion for partial summary judgment was granted in part. Defendant appeals.

*Womble, Carlyle, Sandridge & Rice, by Keith W. Vaughan, for plaintiff appellee.*

*William E. Rabil, Jr., for defendant appellant.*

ARNOLD, Judge.

Defendant contends that plaintiff's motion for summary judgment was improperly granted. For this to be so, there must exist a genuine issue of material fact, or it must be *defendant* who was entitled to judgment as a matter of law. G.S. 1A-1, Rule 56(c).

Defendant's Sixth Defense, which was the subject of the motion, alleges that it is Chapter 25 and not Chapter 44A of the General Statutes which applies to the transaction between the parties. The trial court found that Chapter 25 is the applicable statute, but found further that defendant had failed to comply with the requirements of Chapter 25.

Plaintiff does not contest on appeal the trial court's ruling that Chapter 25 of the General Statutes controls the transaction between the parties, so the initial question for our determination is whether any genuine issue of material fact exists with regard to the defendant's compliance with Chapter 25.

Chapter 25 of the General Statutes is the Uniform Commercial Code. Defendant, agreed by the parties to be a "warehouseman" within the meaning of G.S. 25-7-102(1)(h), has a lien under Chapter 25 against the plaintiff as bailor if the goods are "covered by a warehouse receipt." G.S. 25-7-209(1). A warehouse receipt is "a receipt issued by a person engaged in the business of

storing goods for hire." G.S. 25-1-201(45). Plaintiff argues that no lien attached because a warehouse receipt was never properly issued by defendant.

Defendant's Exhibit A is a "Non-Negotiable Warehouse Receipt" made out in pertinent part as follows:

NON-NEGOTIABLE WAREHOUSE                    CLARK TRANSFER
               RECEIPT                          CO., INC.

RECEIVED FOR THE ACCOUNT OF Mr. G. Grundey
WHOSE LATEST KNOWN ADDRESS IS Ramada Inn
Route 105, Boone, N. C.
GOODS ENUMERATED AND DESCRIBED ON INVENTORY,
IN CONDITION DESCRIBED THEREIN TO BE STORED
AT WAREHOUSE LOCATED AT 322 S. LIBERTY ST.
UPON TERMS AND CONDITIONS LISTED BELOW:

RATE OF STORAGE PER MONTH 50.56
WAREHOUSE HANDLING  — 0 —
RATE OF INSURANCE PER MONTH _____
WEIGHT 6320

A written order bearing same signature as owner's signature below must be presented before withdrawing any goods, and or surrender of this receipt.

ALL CHARGES MUST BE PAID BEFORE DELIVERY OF GOODS.
UNDER TERMS OF CONTRACT, ACCOUNTS ARE PAYABLE
MONTHLY IN ADVANCE.

WAREHOUSEMAN'S LIABILITY SHALL NOT EXCEED
THE STATUTORY LEGAL LIABILITY OF CLARK
TRANSFER CO., INC.

S / (illegible)
SIGNATURE OF WAREHOUSEMAN

_____
SIGNATURE OF OWNER

Defendant, by answer to interrogatories, indicates that this receipt was made out on 10 December 1975, at the time when the tariff laws changed the status of plaintiff's property from "in transit" to "permanent storage," and mailed to plaintiff. Plaintiff

contends that the receipt was not properly issued because he never received it, and did not sign it.

[1]   We consider first whether delivery to the bailor is an essential element of the issuance of a warehouse receipt. The term "issue" is not defined in either G.S. 25-1-201, the general definitions section of Chapter 25, or G.S. 25-7-102, which provides definitions for Article 7. Plaintiff would have us apply the definition of "issue" given in G.S. 25-3-102(1)(a), but that definition by its terms applies only to Article 3, and Article 3 expressly does not cover documents of title, G.S. 25-3-103(1), of which warehouse receipts are a part. G.S. 25-1-201(15). The parties have cited to us no cases, and we have found none, which have dealt with the definition of "issue" in the context of G.S. 25-1-201(45). Accordingly, we must look outside the statute. Black's Law Dictionary 964 (Rev. 4th ed. 1968) defines "issue" as "[t]o send forth; to emit." This accords with the numerous definitions found in Webster's Third New International Dictionary 1201 (1968) and is·the ordinary sense of the word. We note also that had the legislature meant to require delivery, it could have said so. We hold, therefore, that a warehouse receipt need not be *delivered* in order to be issued, but must be *sent forth*.

[2]   Defendant's uncontradicted testimony is that the receipt was mailed to plaintiff, but this does not end the inquiry. Issuance in this context requires not only mailing, but mailing to the proper address. Plaintiff alleges that as a result of a telephone call he made to defendant in November 1975, defendant was aware that his current address was in Stuart, Florida. Defendant denies receiving this telephone call, and alleges that the current address it held for plaintiff was in Boone, North Carolina. The record does not show to which address the receipt was mailed. Assuming that it was mailed to the Boone, North Carolina, address, the question remains whether defendant was or should have been in fact aware that plaintiff previously had changed his address to Stuart, Florida. The question of whether defendant mailed the receipt to the proper address is disputed by the parties, and must be determined by the trier of fact. Since there is an issue as to this material fact, summary judgment for either party is not proper.

[3]   Defendant argues further that plaintiff's motion to strike its Sixth Defense was improperly allowed. Defendant is correct. G.S.

1A-1, Rule 12(f) provides that "the judge may order stricken from any pleading any insufficient defense or any redundant, irrelevant, immaterial, impertinent, or scandalous matter." Defendant's Sixth Defense alleges, in essence, its compliance with Chapter 25. Plaintiff moved to strike on the ground that Chapter 25 did not apply to the transaction between the parties. As the trial court has determined that Chapter 25 does apply, Defendant's Sixth Defense is neither irrelevant nor immaterial. Nor is the defense redundant, impertinent nor scandalous. Far from being an insufficient defense, this defense, if proved, will avoid liability on defendant's part. We hold that plaintiff's motion to strike defendant's Sixth Defense should have been denied.

If defendant proves at trial that it properly issued the warehouse receipt and a lien accordingly attached, there will remain the question of whether defendant complied with the statutory procedures for enforcement of that lien. In the interest of efficiency we set out here our conclusion that in at least one respect defendant failed to comply.

[4]   G.S. 25-7-210(2) provides the sole procedure for enforcement of a warehouseman's lien. Subsection (f) requires that after the owner of the goods is notified of a pending sale, "an advertisement of the sale must be published once a week for two weeks consecutively in a newspaper of general circulation where the sale is to be held. The advertisement must include *a description of the goods* . . . ." (Emphasis added.) The advertisement inserted by defendant in the Winston-Salem Journal read as follows:

> We will on the 29nd day of May, 1976, expose for sale at public auction at 322 Liberty St., S.W., Winston-Salem, N.C. at 2 o'clock p.m. the following lot of household goods, to wit: The property of G. Grundey, for the purpose of satisfying our lien against the aforesaid household goods on account of storage and other charges.

We find that this advertisement does not include a description of the goods sufficient to comply with subsection (f). We believe that the purpose of the requirement is to insure that those who might be interested in buying the items will be present at the sale. This purpose is not adequately served by the use of the general term "household goods," where, as here, the goods to be sold include such varied items as a stereo, color TV, lawn

mower, aquarium, and washing machine. Defendant's non-compliance with subsection (f) does not invalidate the sale, but it does entitle plaintiff to whatever damages he can prove resulted from the noncompliance.

To summarize: Since there exists a genuine issue as to whether defendant followed the necessary procedures for attachment of a warehouseman's lien, neither party is entitled to summary judgment. Defendant is entitled to pursue its Sixth Defense. Plaintiff is entitled to any damages he can prove resulted from defendant's noncompliance with G.S. 25-7-210(2)(f). The order of the trial court denying summary judgment to defendant is affirmed. The order granting plaintiff's motions to strike and for summary judgment is reversed, and the case is remanded for trial.

Affirmed in part and reversed in part, and remanded.

Judges HEDRICK and VAUGHN concur.